IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANG KOO PARK, et al. | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 19-4384 |
| | : | |
| EVANSTON INSURANCE COMPANY, et al. | : | |
| Defendant | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                November 18, 2021

      Presently before the Court is Defendants' Evanston Insurance Company and Markel Corporation (collectively "Evanston")[1] Motion to Enforce a Settlement Agreement (Doc. 48), arising out of a proposal presented by the Court at an August 26, 2021 settlement conference and confirmed in writing the next day. Plaintiffs Sang Koo Park and Bong Ho Park (collectively "the Parks") filed a Response in Opposition to Defendants' Motion. (Doc. 50.) In their Response, the Parks argue "[t]here was no binding contract because both parties did not manifest an intention to be bound by the terms of the settlement agreement proposed by the Court" and that "the terms [of the settlement agreement] were not sufficiently definite to be specifically enforced." (Doc. 50-1 at 4.)  For the reasons set out within, we reject Plaintiffs' arguments and grant Defendants' motion.

---

[1] Evanston Insurance is a subsidiary under the control of Markel Corporation, but Evanston will be treated as a separate entity for the purposes of this opinion.  The insurance policy at issue in this case was issued only by Evanston Insurance Company. Markel Corporation is not an insurance company and did not issue the insurance policy to the Parks.

I.      **BACKGROUND**

As the facts of this case are well known to the parties, we recount only the events pertinent to our disposition of the motion.

This matter arises from two separate claims of damage sustained by the Parks' properties located in Philadelphia, Pennsylvania. The first involved interior water damage to an unfurnished basement on January 9, 2018 at the Parks' property at 4629-4631 Frankford Avenue. The second involved interior water damage to inventory on August 13, 2018 at the Parks' property at 4648-4745 Frankford Avenue. The Parks filed two separate lawsuits in the Philadelphia Court of Common Pleas against Evanston for breach of contract and bad faith in connection with both claims. Evanston removed the cases to this Court. Ultimately, the assigned District Court Judges referred to the cases to us "to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c)." (Doc. 19, Dkt. 19-4753); (Doc. 37, Dkt. 19-4384). We subsequently consolidated the cases under Dkt. 19-4384. On June 24, 2021, we issued an Order for Settlement Conference to be held on August 26, 2021, at 2:00 p.m. with both parties. (Doc. 46.) The settlement conference was conducted via a Zoom video conference. The Parks attended and were represented by their counsel, Wan Lee, Esq. ("Mr. Lee"). Upon the Court's recommendation, understanding that the Parks were not native English speakers, the Parks and Mr. Lee were accompanied by a Korean interpreter. Evanston was represented by Cynthia L. Bernstiel, Esq. ("Ms. Bernstiel") and John R. Casciano, Esq. ("Mr. Casciano").

In the usual way, the Court spoke with counsel and the parties during the conference. We made some progress, but not enough to bring the parties together—at least preliminarily. We were constrained in part on the insistence of Evanston that the Parks had failed to produce sufficient evidence to support their claims. At the conclusion of the conference, however, and in an effort to

resolve the case, I presented to the parties that they may consider a particular procedure sometimes referred to as "baseball style mediation." To come to a resolution by this process, the parties would agree that the case was settled, with the Parks receiving a sum of money to be paid by Evanston. The actual number would be selected by the mediator but had to be within certain high and low parameters—here, no more than $100,000.00 but not less than $60,000.00. The mediator under this process would have to accept one number or the other. After some discussion on the parameters, the parties agreed to proceed in this fashion. This agreement was memorialized by the Court in an email sent to the Parks' counsel and Evanston's counsel on the following day, August 27, 2021 at 10:50 a.m., which read as follows:

> Counsel,
>
> This is to confirm that counsel, with client authority, agrees to settle the case based upon a payment to be made by the defendant and accepted by plaintiffs of less than $100,000 but more than $60,000. Under this procedure each counsel will give the Court their "number" in writing **on or before noon Monday, August 30, 2021.** The Court will then promptly advise counsel of "the number." For the avoidance of doubt this procedure reflects that the case is **settled,** subject only to the Court's determination of which of the 2 numbers he selects.  If either of you have any uncertainty with respect to this process, you are to contact the Court for clarification.

(Doc. 48-3, Def. Ex. 1) (emphasis in original).

Neither Evanston's counsel nor the Parks or their counsel sought clarification or expressed a lack of understanding of the process memorialized in the Court's August 27, 2021, correspondence. On the morning of August 30, 2021, however, Mr. Lee sent the following correspondence:

> Dear Honorable Strawbridge:
>
> Our clients (Mr. and Mrs. Park) are immensely grateful for your Honor's time and effort to assist in the settlement of two cases before your Honor on August 26, 2021 (Thursday). After careful

> consideration over the weekend, Mr. and Mrs. Park have decided
> that they are unable to agree to the settlement proposal and do not
> wish to settle this case. Accordingly, Plaintiffs would respectfully
> request trials for both matters before a different Judge per the
> parties' agreement.

(Doc. 48-4, Def. Ex. 2.)

Notably, Mr. Lee's email did not suggest any lack of understanding of the settlement

agreement terms—he only stated that his clients decided they no longer agreed to be bound by it.

On September 7, 2021, the Court held a telephone conference with counsel for both parties and

repeated the settlement terms in the August 27, 2021 correspondence. There, Ms. Bernstiel

reiterated Evanston's commitment to the settlement agreement and stated, albeit after failing to

meet the initial deadline set for noon on August 30, that the settlement "number" should be at

$65,000.00. (Doc. 48-1 at 4.) The Parks did not submit a number to the Court in their August 30,

2021 email, during the September 7, 2021 conference, or at any other time. Rather, Mr. Lee

reported to that, "after careful consideration over the weekend" his clients decided that they were

"unable to agree to the settlement proposal and do not wish to settle the case." (Doc. 48-4, Def.

Ex. 2.) Ms. Bernstiel sent correspondence stating that Evanston's number would be $65,000.00.

(Doc. 48-5, Def. Ex. 3.)

Evanston brings this motion arguing that the settlement agreement is valid and requesting

that this case be resolved, as "Defendants and Plaintiffs manifested an intention to be bound by

the terms specifically outlined by Judge Strawbridge during the August 26, 2021, settlement

conference as memorialized in his August 27, 2021, correspondence." (Doc. 48 at 5.)  Evanston

notes that the settlement agreement is valid under Pennsylvania law and that it is "immaterial" if

the settlement agreement was not reduced to writing on August 26, 2021. (*Id.* at 6.)  Further,

Evanston argues that the correspondence on August 27, 2021, is "sufficiently definite" to be enforced, as the Court expressly reviewed and defined the terms of the parties' agreement. (*Id.*)

The Parks argue that there is no binding contract between the parties because the terms are not "sufficiently definite" and that both parties did not intend to be bound by the settlement agreement proposed by the Court. (Doc. 50 at 4.) The Parks claim that neither party submitted a settlement amount by August 30, 2021, making no binding contract. (*Id.*) The Parks also argue that the Court's correspondence laying out the terms of the settlement agreement was "unclear and ambiguous" and that Evanston's failure to submit a number on August 30, 2021 negates the binding nature of the settlement agreement. (*Id.*) There is no dispute among the parties that Pennsylvania law governs our interpretation and enforcement of the settlement agreement, therefore, we apply Pennsylvania law in our review of their arguments.[2]

## II.    LEGAL STANDARD

Both federal and state courts in Pennsylvania "encourage settlement agreements as a way to resolve disputes relatively amicably and lighten the load of litigation before the courts." *McClure v. Twp. of Exeter*, No. CIV.A. 05-5846, 2006 WL 2794173, at *1 (E.D. Pa. Sept. 27, 2006) (citing *Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick*, 587 A.2d 1346, 1348 (Pa. 1991)). Even where settlements are "judicially approved, they share many characteristics of voluntary contracts and are construed according to traditional precepts of contract construction." *In re Columbia Gas Sys. Inc.*, 50 F.3d 233, 238 (3d Cir. 1995). A court can enforce the terms of the settlement agreement when the agreement contains all the requisites for a valid contract. *See Williams v. Metzler*, 132 F.3d 937, 946 (3d Cir. 1997); *see also McDonnell v. Ford Motor*, 643

---

[2] The enforceability of settlement agreements is governed by state contract law. *See Glenn Distrib. Corp. v. Sanford, LP*, No. CIV.A. 12-513, 2014 WL 1608481, at *1 (E.D. Pa. Apr. 22, 2014).

A.2d 1102, 1105 (Pa. Super. 1994) ("Our Court will enforce the settlement if all of the material terms of the bargain are agreed upon."). Like many contracts, settlement agreements do not need to be reduced in writing to be binding and enforceable. *See McClure*, No. CIV.A. 05-5846, 2006 WL 2794173, at *1 (citing *Beazer E., Inc. v. Mead Corp.*, 412 F.3d 429, 436-37 (3d Cir. 2005)). Moreover, in the circumstances where the parties "expressly contemplated that a formal, written recitation of their agreement" would subsequently outline the agreed-upon terms articulated in a settlement conference, the parties may still "walk away from the conference with an enforceable agreement," where they have indicated a clear intent to be bound by those terms. *Camargo v. Alick Smith Gen. Contractor, Inc.*, No. 5:15-CV-06215, 2016 WL 6568120, at *2 (E.D. Pa. Nov. 4, 2016). A party's "change of heart" between the time they agree to the settlement terms and when the terms are reduced to writing is not sufficient to revoke the agreement. *Forba v. Thomas Jefferson Univ. Hosp.*, No. 15 1722, 2016 WL 3661760, at *3-4 (E.D. Pa. July 8, 2016), *aff'd*, 666 F. App'x 106 (3d Cir. 2016) ("We cannot allow parties to reach settlement agreements and then change their mind with buyer's remorse.").

Under Pennsylvania law, the test for enforcing a settlement agreement is: "[1] whether both parties have manifested an intention to be bound by its terms and [2] whether the terms are sufficiently definite to be specifically enforced." *Shell's Disposal & Recycling, Inc. v. City of Lancaster*, 504 Fed. App'x 194, 200 (3d Cir. 2012) (*quoting Channel Home Ctrs. v. Grossman*, 795 F.2d 291, 298-99 (3d Cir. 1986)). As to the first prong of the test, the objective intent of a party is determined by whether a reasonable person would assume the party's behavior suggests an intent to be bound by the agreement. *See id.* at 201. Under Pennsylvania law, an attorney has actual authority to agree to a settlement on behalf of a client. *See Covington v. Cont'l Gen. Tire, Inc.*, 381 F.3d 216, 218-219 (3d Cir. 2004). As to the second prong of the test, a settlement

agreement is not an enforceable contract if the terms are "ambiguous or poorly defined" such that it is "impossible to understand" the parties' agreement. *Shell's Disposal & Recycling, Inc.*, 504 Fed. App'x at 202 (*quoting Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 586 (3d Cir. 2009). Where the parties fail to have discussions of the essential terms of the bargain, performance, or settlement amount, there is no agreement. *See Lombardo v. Gasparini Excavating Co.*, 123 A.2d 663, 666 (Pa. 1956). Likewise, where the initial efforts memorializing draft agreements between parties differ dramatically on essential terms, the agreement will be deemed unenforceable. *See Mazzella v. Koken*, 739 A.2d  531, 537-38 (Pa. 1999).

## III.   DISCUSSION

Evanston claims that the settlement agreement is enforceable, in that the parties expressed a mutual intent to be bound by its terms and the agreement is sufficiently definite to be specifically enforced. *See* (Doc. 48 at 5-6.) As to the first prong of the enforcement test, Evanston asserts that the parties were not only present at the settlement conference when the terms of the agreement were explained, but that the Parks were able to consult privately with their counsel about the proposal. *See* (*id.*) Mr. Lee then assented to the agreement on behalf of his clients with full knowledge of its terms and consequences, thereby binding the Parks to the settlement via his apparent authority as their counsel. *See* (*id.*) As to the second prong of the enforcement test, Evanston argues that the determination of the settlement number via the "baseball style mediation," was explained to the parties in the conference and confirmed in writing by the Court, thereby "memorializing" the terms of the parties' contract. *See* (*id.* at 6-7.) For the reasons set out below, we accept Evanston's arguments and grant Defendants' motion to enforce the settlement agreement.

## A. Objective Intent of the Parties

Turning first to the parties' objective intent, we must determine whether a reasonable person would assume the party's behavior suggests an intent to be bound by the agreement. *See Shell's Disposal & Recycling, Inc*., 504 Fed. App'x at 200. At the settlement conference on August 26, 2021, the Court asked counsel for both parties if they accepted the terms of the settlement agreement. They replied in the affirmative. The next day, on August 27, 2021, the Court explained in writing, "[f]or the avoidance of doubt this procedure reflects that the case is **settled**, subject only to the Court's determination of which of the 2 numbers he selects." (Doc. 48-3, Def. Ex. 1) (emphasis in original). Neither the Parks nor Mr. Lee voiced any objection to the terms of the agreement as written by the Court, or the fact that the Court considered the case settled. In light of Mr. Lee's express consent to the proposal during the conference, and his subsequent failure to contest the Court's memorialization of its terms, a reasonable person would assume that the Plaintiffs' behavior indicated a clear intent to be bound. We note that the Parks and Mr. Lee consulted with the Court during the settlement conference and were also able to consult with each other independently without the Court's presence at various times. Even if the Parks did not wish to be bound by the agreement, it was Mr. Lee's responsibility to accurately represent the wishes of his clients to the Court and to Evanston. Regardless, Mr. Lee assented to the settlement agreement on the Parks' behalf in the presence of the Court and opposing counsel, binding his clients to its terms via his apparent authority as their counsel. In our view, a reasonable person would accept that this behavior reflects an intent to be bound to the settlement agreement.

In response to Evanston's arguments, the Parks claim that neither party manifested an intent to be bound by the agreement, as demonstrated by the fact that neither party submitted a settlement amount by the requisite time, noon on August 30, 2021. *See* (Doc. 50 at 4.) Additionally,

8

the Parks allege that Ms. Bernstiel's request for a meet-and-confer to discuss outstanding discovery issues indicates that Evanston believed the case would be moving forward. *See* (*id*.) Addressing first the Parks' allegations regarding Evanston's failure to submit a settlement number, we note that during a status call on September 7, 2021, Evanston indicated that it did not submit a number by noon on August 30, 2021 because it believed that the Parks had breached the agreement earlier that morning by attempting to withdraw their assent. Ms. Bernstiel then reiterated Evanston's commitment to the settlement and submitted Evanston's settlement number to the Court as $65,000.00. *See* (Doc. 48-1 at 4.) Further, although we appreciate the Parks' argument that Ms. Bernstiel's request for a meet-and-confer demonstrates a lack of intent to be bound by the agreement, we cannot accept that Ms. Berstiel's correspondence invalidated her client's previously expressed intent. Our task in enforcing the settlement agreement is "to interpret the language of the settlement agreement in conformance with the intention of the parties *at the time of contracting*." *Fineman v. Armstrong World Indus., Inc*., 980 F.2d 171, 215–216 (3d Cir. 1992) (emphasis added). Ms. Bernstiel sent the request for the meet-and-confer shortly after the Parks communicated that they no longer wished to settle the case; we cannot allow the Parks to breach the agreement and then claim that Ms. Bernstiel's reaction to their breach somehow evinces Evanston's lack of intent to be bound.

As this Court has held in the past, the parties need not have "walked out of" the videoconference on August 26, 2021 with a formal, written recitation of the agreement in order to be bound to its terms. *See Camargo*, No. 5:15-CV-06215, 2016 WL 6568120, at *2. It is enough that Evanston and the Parks parted ways with an intent to be bound by certain orally agreed-upon conditions, which were memorialized in writing less than 24 hours later by this Court. *See id*. We think that in light of Plaintiffs' behavior, and in consideration of Evanston's subsequent conduct

in reaction to Plaintiffs' attempted withdrawal, a reasonable person would think the parties manifested an intent to be bound by the settlement agreement.

### B. Definite Terms of the Agreement

Next, we must determine whether the terms of the settlement agreement are sufficiently definite to be enforced, as the agreement is not enforceable if the terms are "ambiguous or poorly defined," such that it is "impossible to understand" the parties' meaning in entering the contract. *Shell's Disposal & Recycling, Inc*., 504 Fed. App'x at 202. The terms of the settlement agreement were discussed at length during the settlement conference on August 26, 2021, orally agreed-upon by both parties, and subsequently confirmed in writing by the Court on August 27, 2021, the morning after the conference. The Court's correspondence unequivocally stated that the matter was considered settled, pending a determination by the Court of a final number submitted by each party in the range of $60,000.00-$100,000.00. *See* (Doc. 48-3, Def. Ex. 1.) It cannot be said that the parties had absolutely no discussion of the essential terms of the settlement amount, nor can it be said that the parties differed dramatically on the settlement amount. *See Mazzella*, 739 A.2d at 537-38; *Lombardo*, 123 A.2d at 666. Although Evanston and the Parks failed to agree to a definite number during the settlement conference, they agreed to a range of numbers where both parties would be comfortable resolving the case. The terms of this "baseball style mediation," which has been used in the past by this Court without issue, were explained at length during the settlement conference. In accordance with those terms, Evanston set forth a settlement number of $65,000.00; the Parks failed to set forth any number for us to consider. Thus, the terms of the settlement are sufficiently definite that it is possible for the Court to enforce the settlement at $65,000.00.

In response, the Parks argue that the settlement conference was "unclear and ambiguous," citing to the Parks' correspondence to the Court on August 30, 2021. (Doc. 50 at 4.) We are not

persuaded that the Parks or Mr. Lee were confused as to the terms of the agreement. Indeed, Mr. Lee wrote that "Mr. and Mrs. Park have decided that they are unable to agree to the settlement proposal and do not wish to settle this case." (Doc. 48-4, Def. Ex. 2.) Notably, Mr. Lee did not indicate that the Parks did not understand the terms of the agreement, nor did Plaintiffs ever request further clarification about the terms of the proposal from the Court. In fact, Mr. Lee wrote that the Parks no longer wished to settle the case "[a]fter careful consideration over the weekend." (*Id.*) The Parks' mere "change of heart" or "buyer's remorse" does not provide a sufficient legal excuse to invalidate a valid settlement agreement, nor is it the same thing as "ambiguity." Additionally, the Parks argue—again—that Evanston's failure to submit a number by the deadline on August 30, 2021 indicates that the terms were ambiguous. (Doc. 50 at 4.)  As Evanston already explained to the Court, its failure to submit a number on August 30, 2021 was not out of any misunderstanding of the agreement's terms, but rather, out of confusion created by the Parks' attempt to withdraw from the settlement altogether.

We find that the terms of the parties' agreement, namely, that the case was considered "settled" pending the determination of a final number by the Court in an agreed-upon range, are sufficiently definite to be enforced. Not only were the terms discussed at length during the settlement conference, but they were orally agreed-upon and confirmed by this Court in writing the following day without objection or further inquiry. The terms of the settlement agreement settled the case according to the determination of a final number by the Court, and in accordance with the number submitted by Evanston on September 7, 2021, the settlement shall be enforced in the amount of $65,000.00.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant has demonstrated that the parties manifested an intent to be bound by the settlement agreement and that the terms of that agreement are sufficiently definite to be enforced.   Accordingly, Defendant's motion is granted. An appropriate Order follows.